

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00267-CR

JOSEPH MICHAEL HALEY,

Appellant

 v.

THE STATE OF TEXAS,

Appellee

**From the 249th District Court**
**Johnson County, Texas**
**Trial Court No. DC-F202200582**

## MEMORANDUM OPINION

A jury found Appellant Joseph Michael Haley guilty of the offenses of (1) manslaughter with a deadly weapon and (2) accident involving personal injury or death. *See generally* TEX. PENAL CODE ANN. § 19.04; TEX. TRANSP. CODE ANN. § 550.021. The jury then assessed Haley's punishment, enhanced by prior felony convictions, to which he had pleaded "true," at life imprisonment for each offense. The trial court sentenced Haley accordingly and ordered that the sentences run concurrently. This appeal ensued. We affirm.

**Background**

At around 6:30 p.m. on November 14, 2018, Kimberly Norris was traveling on Farm-to-Market Road 1434 when she came upon a Dodge pickup truck facing sideways in the middle of the roadway. The truck's doors were open, its air bags had deployed, and it had sustained heavy damage to its front end. Kimberly did not see anyone in or around the truck at that time, but she did see beer cans in the back floorboard of the truck and smelled alcohol and marijuana in the truck.

Kimberly's husband, Scott Norris, was also traveling on Farm-to-Market Road 1434 that evening and arrived at the scene a few minutes after Kimberly. Once Scott arrived, he and Kimberly discovered a second vehicle down in the ditch beside the roadway. Scott made his way down to the vehicle and determined that the driver of that vehicle was deceased. Scott then made his way back up to the roadway where his attention was drawn to the other side of the road where a dog was approaching. Scott then noticed a person, later identified as Haley, moving beneath a tree against the barbed-wire fence on the other side of the roadway.

Scott retrieved a flashlight and started walking toward Haley, whom he could then see was wrapped in a blanket underneath the tree. When Scott asked Haley if he was hurt or needed help, Haley began swearing at Scott and told Scott to leave him alone because he was trying to sleep. Haley then started walking toward Scott. It appeared to Scott that Haley was intoxicated or high.

Dana Hackler, who had also been traveling on Farm-to-Market Road 1434 that evening and had arrived at the scene by that time, testified that Haley was "definitely

staggering around." Like Scott, she thought that Haley either had been drinking or was on drugs. When emergency personnel then began arriving at the scene, Haley ran down the fence line, jumped over the barbed-wire fence, and ran into the pasture. Haley was not seen again that night.

Texas Department of Public Safety Trooper Brenden Helton responded to the crash scene that evening and observed the severely damaged Dodge pickup truck in the roadway. Haley was no longer at the scene when Trooper Helton arrived. When Trooper Helton began looking inside the truck, he found a partial Johnson County Corrections ID bracelet with Haley's name on it, an open container of Bud Light Lime-A-Rita, a small bag of marijuana, and a marijuana pipe. An open whiskey bottle was also found near the truck. As part of his investigation into the driver of the truck, Trooper Helton also ran the truck's license plate and discovered that it did not correspond with the truck. The truck's registration sticker likewise did not correspond with the truck. Trooper Helton then ran the VIN number on the truck and learned that the truck had been reported stolen out of Johnson County just days before.

The next morning, Hackler was again traveling on Farm-to-Market Road 1434 when she encountered Haley standing in the middle of the road. When Hackler pulled over and asked Haley if he needed help, Haley responded that he had been in a car accident and that he needed a ride to Glen Rose. Hackler told Haley that she could not help him and drove off, but after calling 911, she returned to ensure that Haley did not leave before law enforcement arrived. While Hackler and Haley were talking, Haley repeatedly asked Hackler not to call the police. Later in the conversation with Hackler,

Haley also recounted that he thought he had "had a car accident last night and [he] might have killed somebody." Haley said that he thought the accident was his dog's fault. The police eventually arrived, arrested Haley, and took him to the hospital to have his injuries treated.

Law enforcement interviewed Haley at the hospital. During the interview, Haley admitted that he had been driving the Dodge pickup truck the prior evening when the crash occurred. Haley acknowledged that, except for his dog, he had been alone in the truck. Haley also admitted that he had been driving the truck even though his license was expired and even though he had no insurance on the truck. Haley explained that he had purchased the truck in Fort Worth as a salvage vehicle about one week before. He stated that he had not yet transferred the truck into his name but that the bill of sale and the title were in the truck. Haley then explained that the crash had occurred because the other vehicle had come into his lane and hit him, leaving him dazed and dizzy. A woman had then arrived and said that the driver of the other vehicle was dead. Haley explained that he had therefore decided to just walk off. He had had some marijuana and had wanted to go smoke it. Haley stated that he had not, however, had any alcohol or smoked any marijuana before the crash. He stated that he did smoke marijuana in the evenings but that he did not smoke and drive. Haley then explained that after the crash, he had walked several hundred yards into the woods and that he had been so dizzy that he had fallen and stayed there.

Haley's hospital medical records showed that Haley has a past medical history of narcotic abuse and a social history of alcohol use that includes fifteen shots of liquor and

ten cans of beer per week. Haley's hospital medical records further showed that about fourteen hours after the crash, a urine drug screen was performed, and a blood specimen was collected from Haley. The results from the urine drug screen were positive for amphetamines and cannabinoids. Testing of the blood specimen was negative for alcohol, but Texas Department of Public Safety Trooper Brian Yeager testified that there was enough time between the crash and the blood collection for any alcohol to have dissipated from Haley's system. Erin Casmus, a forensic scientist with the Texas Department of Public Safety, further testified that, along with another unknown individual who was a much lower contributor, Haley's DNA was on the mouth of the whiskey bottle that was found near the truck. Finally, Kelsi Miller, another forensic scientist with the Texas Department of Public Safety, testified that Haley had 0.06 milligrams per liter of methamphetamine in his blood about fourteen hours after the crash. She noted that this amount is above the initial therapeutic range and could cause impairing effects.

Trooper Yeager ultimately explained that, based on the partial Johnson County Corrections ID bracelet, law enforcement determined that Haley had been released from the Johnson County Jail on November 9, 2018. The Dodge pickup truck was then reported stolen on November 10, 2018, from a motel across the street from the Johnson County Jail, and the crash occurred on November 14, 2018. Trooper Yeager testified that, after investigating the accident, he determined that Haley had caused the collision because he was driving the Dodge pickup truck on the wrong side of the road, *i.e.*, northbound in the southbound lane. Trooper Yeager testified that, given the totality of

the circumstances in this case, he considered Haley's traveling on the wrong side of the roadway to be reckless. Similarly, accident reconstructionist Timothy Lovett testified that the collision occurred because the Dodge pickup truck left its lane of travel and encroached into the oncoming lane of travel. Lovett further agreed that Haley was reckless in driving northbound in the southbound lane, which caused the wreck that killed the driver of the other vehicle. Finally, the defense's expert, accident reconstructionist Dr. Mike Andrews, agreed with Lovett's conclusion that the Dodge pickup truck encroached into the opposite lane and collided with the oncoming vehicle but stated that, in his opinion, it was unknown what occurred to cause Haley to drive into the opposite lane.

## Issue

In his sole issue, Haley contends that the trial court erred in allowing the prosecution to introduce extraneous-offense evidence that the pickup truck that he was driving at the time of the offenses was stolen.

A trial court's ruling on the admissibility of evidence is reviewed under an abuse-of-discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). Under that standard, we affirm an admissibility ruling when it is within the zone of reasonable disagreement. *See id.*; *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). "Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the judge gave the wrong reason for his right ruling." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Rule of Evidence 404(b) precludes the admission of evidence of a crime, wrong, or other act to prove a person's character in order to show that the person acted in conformity with that character on a particular occasion, but the rule allows for such evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b). The listed purposes "are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343. Therefore, although Rule 404(b) limits character evidence, it is a rule of inclusion. *Id.*; *see Gaulding v. State*, No. 02-21-00096-CR, 2022 WL 17986026, at *4 (Tex. App.—Fort Worth Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication).

Haley was charged with the offense of accident involving personal injury or death.[1] Subsection 550.021(c) of the Transportation Code provides that a person commits the offense of accident involving personal injury or death if the person does not stop or does not comply with the requirements of section 550.021. TEX. TRANSP. CODE ANN. § 550.021(c). Subsection 550.021(a) states:

> The operator of a vehicle involved in a collision that results or is reasonably likely to result in injury to or death of a person shall:
>
> (1) immediately stop the vehicle at the scene of the collision or as close to the scene as possible;
>
> (2) immediately return to the scene of the collision if the vehicle is not stopped at the scene of the collision;

---

[1] Effective September 1, 2023, the Legislature changed the term "accident" to the term "collision" to describe transportation-related accidents, but the Legislature explained that the changes were nonsubstantive and intended to clarify rather than change existing law. Act of May 26, 2023, 88th Leg., R.S., ch. 709. Accordingly, in this opinion, the terms are used interchangeably.

(3) immediately determine whether a person is involved in the collision, and if a person is involved in the collision, whether that person requires aid; and

(4) remain at the scene of the collision until the operator complies with the requirements of Section 550.023.

*Id.* § 550.021(a).  Section 550.023 provides:

The operator of a vehicle involved in a collision resulting in the injury or death of a person or damage to a vehicle that is driven or attended by a person shall:

(1) give the operator's name and address, the registration number of the vehicle the operator was driving, and the name of the operator's motor vehicle liability insurer to any person injured or the operator or occupant of or person attending a vehicle involved in the collision;

(2) if requested and available, show the operator's driver's license to a person described by Subdivision (1); and

(3) provide any person injured in the collision reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation.

*Id.* § 550.023.

The complained-of testimony about the stolen truck helped explain why Haley fled the scene of the collision without giving information or rendering aid.  In other words, the evidence helped prove motive.  Haley argues that motive is not required to be proven to convict, but Rule 404(b) expressly allows for extraneous-offense evidence to be admitted to prove motive.  *See* TEX. R. EVID. 404(b).  We therefore conclude that the trial court did not abuse its discretion by admitting the complained-of evidence about the stolen truck.

And even if it was error to admit the complained-of evidence, we cannot say that Haley was harmed. Generally, the erroneous admission or exclusion of evidence is non-constitutional error governed by Rule of Appellate Procedure 44.2(b) if the trial court's ruling merely offends the rules of evidence. *See* TEX. R. APP. P. 44.2(b); *Rodriguez v. State*, 546 S.W.3d 843, 861 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Under Rule 44.2(b), we disregard all non-constitutional errors that do not affect the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Rich*, 160 S.W.3d at 577; *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). In conducting a harm analysis, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Rich*, 160 S.W.3d at 577–78.

Here, the evidence supporting guilt is overwhelming. *See Motilla v. State*, 78 S.W.3d 352, 356–57 (Tex. Crim. App. 2002) (holding that overwhelming evidence of guilt is factor to consider in Rule 44.2(b) harm analysis). Additionally, testimony concerning the stolen pickup truck was brief within the context of the entire trial, and the State only briefly mentioned it in its closing argument. *See id.* at 356 (recognizing that "whether the State emphasized the error can be a factor" in a Rule 44.2(b) harm analysis). The fact that

the pickup truck had been stolen was not the focus of the trial; rather, the evidence at trial centered on whether the crash was a reckless act. Furthermore, the guilt-innocence charge contained a Rule 404(b) limiting instruction, which also mitigates any harm. *See Bezerra v. State*, 485 S.W.3d 133, 144 (Tex. App.—Amarillo 2016, pet. ref'd) (concluding that appellant was not harmed by erroneous admission of extraneous-offense evidence because evidence of guilt was overwhelming and because trial court instructed jury to limit consideration of extraneous-offense evidence to show appellant's intent, motive, or plan). Therefore, we conclude that any error in the admission of the complained-of extraneous-offense evidence did not affect Haley's substantial rights such that his convictions should be reversed. *See* TEX. R. APP. P. 44.2(b); *Rich*, 160 S.W.3d at 577.

Based on the foregoing, we overrule Haley's sole issue.

## Conclusion

We affirm the trial court's judgments.


MATT JOHNSON
Justice


Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed
Opinion delivered and filed February 29, 2024
Do not publish
[CRPM]

